UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
CASE NO. 25-61411-CIV-DIMITROULEAS/HUNT

NATIONSBENEFITS, LLC,

    Plaintiff,

v.

DANIELLE BRADY, PATRICK VINCENT,
ALISHA JACKSON, and PROEAR
REVENUE SOLUTIONS,

    Defendants.
_____/

## REPORT AND RECOMMENDATION

THIS MATTER came before the Court on Plaintiff's *Ex Parte* Expedited Motion for a Preliminary Injunction. ECF No. 5. The Honorable William P. Dimitrouleas referred this Motion to the undersigned United States Magistrate Judge. ECF No. 6; see also 28 U.S.C. § 636; S.D. Fla. L.R., Mag. R. 1. Upon thorough and careful review of the Motion, the applicable law, evidence and argument of counsel at a July 31, 2025, *ex parte* hearing and being otherwise fully advised in the premises, the undersigned RECOMMENDS Plaintiff's motion be GRANTED.

NationsBenefits, LLC ("Nations") brings a claim against Defendants, Danielle Brady ("Brady"), Patrick Vincent ("Vincent"), Alisha Jackson ("Jackson"), and ProEar Revenue Solutions ("ProEar") (collectively, the "Defendants"), relating to breach of contract, violations of 18 U.S.C. § 1836 (Defend Trade Secrets Act), tortious interference with business relationship, and common law breach of the duty of loyalty. Nations seeks

to enjoin Defendants from their alleged current interference and ongoing contractual violations.

Nations provides hearing aid benefit revenue cycle management services ("RCM") to various clients in the hearing aid industry, focusing on provider groups and manufacturers.  ECF No. 5.  RCM business entails submitting/reviewing claims, denial reviews, client services, reimbursement rate negotiations, insurance verifications, and other administrative functions related to the handling of healthcare payments.  *Id.*  In late 2024, Nations' wholly-owned subsidiary, NationsVision, LLC, entered into an agreement to purchase related entities, including GVS Hearing RCM, LLC ("GVS").  *Id.*  Nations extended employment offers to former GVS employees Defendants Vincent, Jackson, and Brady.  *Id.*  Vincent served as Vice President of Business Development from November 2024.  *Id.*  Defendants Brady and Jackson reported to, were supervised by, and had contact with Defendant Vincent during the course of their employment with Nations.  *Id.*  Jackson served as the RCM Hearing Manager from November 2024, and Brady served as Director of Credentialing, Enrollment, & Strategic Sales from May 2025.  *Id.*  All three executed a Confidentiality, Non-Competition, and Non-Solicitation Agreement.  *Id.*  The agreement prevents employees from divulging or utilizing proprietary and confidential business and client information:

> In consideration of the Employee's new or continued employment by the Company, the Employee hereby agrees that during the period of such employment and at all times thereafter, the Employee shall hold in confidence and shall not, directly or indirectly, divulge, disclose or **appropriate**, **trade secrets, confidential or proprietary information, and all other information, documents or materials**, relating to, owned, developed or possessed by the Employee **related to the Business and/or Company**, whether in tangible or intangible form (**whether or not denoted as confidential trade secret or proprietary**), including, but not limited to,

2

the following: . . . (xviii) business relationships, methods and recommendations, (xix) **existing or prospective client**, customer, vendor and supplier information (including, but not limited to, **identities**, needs, transaction histories, volumes, characteristics, agreements, prices, **identities of individual contacts**, and spending preferences or habits), … (xxiii) contracts with other parties (including the negotiations and terms of such contracts), . . . and (xxv) other confidential or proprietary information that has not been made available to the general public by the Company (collectively, the "Proprietary Information").

ECF No. 1, Exh. C p. 1 (emphasis added). The agreement also prohibits for the period of one year Nations' employees from engaging in competitive business:

**Covenant Not to Compete.** . . . [W]hile employed by [Nations] and for a period of one (1) year following the termination of such employment (the "Restricted Period"), the Employee shall not (without the prior written consent of the Company), in any manner, directly or indirectly, on behalf of Employee or any other person or entity, (a) **own**, invest in, or provide financing to **any business that engages in the Business of the Company in the Covered Area**, **and/or** (b) **work** in the Covered Area for any person or **entity engaged in the Business in any role**: (i) that is similar to any position Employee held with the Company during the twenty-four (24) months preceding the termination of Employee's employment, (ii) that is **executive, leadership, managerial, or strategic in nature**, or (iii) that may cause Employee to inevitably rely upon or disclose [Nations'] Proprietary Information…. For purposes of this Agreement, "Covered Area" means the United States.

. . .

**Covenants Not to Solicit.** . . . [W]hile employed by [Nations] and for a period of one (1) year following the termination of such employment (the "Restricted Period"), the Employee shall not (without the prior written consent of the Company), in any manner, directly or indirectly, whether as an owner, partner, **participant of a joint venture**, trustee, proprietor, employee, member, manager, director, officer, **employee, independent contractor**, capital investor, lender, guarantor, credit enhancer, consultant or an advisor **or in any other capacity, work for, become retained by, engage in, own, manage, operate or control, or participate in the ownership, management, operation or control of, any entity** (other than the Company) **that engages in the Business of the Company or that otherwise competes, or would compete, directly or indirectly, with**

3

>  **[Nations]** in the Covered Area. For purposes of this Agreement, "Covered Area" means the United States.

ECF No. 5, Exh. C p. 3 (emphasis added).

Due to corporate restructuring, Nations terminated Vincent's contract on June 5, 2025. *Id.* Jackson and Brady submitted resignation letters on July 1, 2025. *Id.* Defendants then established ProEar, a direct competitor to Nations' RCM business. ECF No. 5. Nations contends Defendants began taking steps to establish their competing business and solicit Nations' customers while still working at Nations. *Id.* The identities of Nations' customers are not available to the general public and Nations takes reasonable steps to protect its customer lists, including the point of contact and their contact information for each customer. ECF No. 5. At the hearing on the motion, Nations produced emails indicating that Defendants Jackson and Brady had communicated with Nations' clients regarding a "rebranding" of the RCM department to ProEar and had encouraged Nations' clients to transfer business and customer information for servicing by ProEar. ECF No. 5, Exh. 3, 5.

## **LEGAL STANDARD**

A temporary restraining order is used primarily for maintaining the status quo of the parties. *See, e.g., Cate v. Oldham*, 707 F.2d 1176, 1185 (11th Cir. 1983). "The chief function of a preliminary injunction is to preserve the status quo until the merits of the controversy can be fully and fairly adjudicated." *Robinson v. Attorney Gen.*, 957 F.3d 1171, 1178 (11th Cir. 2020) (quoting *Ne. Fla. Ch. of Ass'n of Gen. Contractors v. City of Jacksonville*, 896 F.2d 1283, 1284 (11th Cir. 1990)). To support a preliminary injunction, a district court need not find that the evidence positively guarantees a final verdict in plaintiff's favor. *Levi Strauss & Co. v. Sunrise Intern. Trading Inc.*, 51 F.3d 982, 985 (11th

Cir. 1995). There are four necessary elements that must be shown to justify the issuance of a preliminary injunction or a TRO:

(1) [that there is] a substantial likelihood of success on the merits;

(2) that irreparable injury will be suffered if the relief is not granted;

(3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and

(4) that the entry of the relief would serve the public interest.

*Schiavo ex. rel Schindler v. Schiavo*, 403 F.3d 1223, 1225–26 (11th Cir. 2005). Likelihood of success on the merits "is generally the most important of the four factors." *Speech First, Inc. v. Cartwright*, 32 F.4th 1110, 1124 (11th Cir. 2022) (citation omitted). "A preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly establishe[s] the burden of persuasion as to each of the four prerequisites." *Four Seasons Hotels and Resorts, B.V. v. Consorcio Barr, S.A.*, 320 F.3d 1205, 1210 (11th Cir. 2003) (alterations, quotations, and citations omitted). Such an injury "must be neither remote nor speculative, but actual and imminent." *Id.* (quoting *SME Racks, Inc. v. Sistemas Mecanicos Para, Electronica, S.A.*, 243 F. App'x 502, 504 (11th Cir. 2007)).

Additionally, the requirements for granting an *ex parte* temporary restraining order, such as is at issue here, go beyond the usual requirements for injunctive relief, allowing a district court to grant such a request only if (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required. *Martinez Serna v. Bailey Farms S., LLC*, 2:21-CV-237-SPC-MRM, 2021

5

WL 1060176, at *1 (M.D. Fla. Mar. 19, 2021) (quoting Fed. R. Civ. P. 65(b)(1)). These requirements acknowledge "that informal notice and a hastily arranged hearing are to be preferred to no notice or hearing at all." *Granny Goose Foods, Inc. v. Bhd. of Teamsters and Auto Truck Drivers Local No. 70 of Alameda Cnty.*, 415 U.S. 423, 432 n.7 (1974). Here, the first requirement is outlined in Nations' motion and at a hearing on the matter. The second requirement was met because Nations' counsel verified that he had spoken to at least one of the Defendants, made him aware of the hearing, and received the response that because Defendants were at that time unrepresented by counsel, no representative from Defendants would attend the hearing.

## **DISCUSSION**

The facts in Nations' complaint and submitted evidence, along with testimony at the hearing of Nations' Executive Vice President of Business Operations, Kyle Putnam, support the following conclusions of law:

### I.   **Substantial Likelihood of Success on the Merits**

Nations has a strong likelihood of prevailing on its breach of the non-compete agreements signed by Defendants. Nations argues it had a legitimate business interest in keeping confidential business, professional, and client information and the substantial relationships it has with existing clients. Nations also points to the one-year term of the non-compete agreement as a reasonable period of time to restrict employees to protect its proprietary information.

"For a breach of contract claim, Florida law requires the plaintiff to plead and establish: (1) the existence of a contract; (2) a material breach of that contract; and (3) damages resulting from the breach." *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1272

(11th Cir. 2009) (citing *Friedman v. N.Y. Life Ins. Co.*, 985 So. 2d 56, 58 (Fla. 4th DCA 2008)). "When a breach-of-contract action is based upon enforcement of a restrictive covenant, however, the plaintiff must plead and prove additional elements in order to establish that the restrictive covenant is a valid restraint of trade." *Rauch, Weaver, Norfleet, Kurtz & Co., Inc. v. AJP Pine Island Warehouses, Inc.*, 313 So. 3d 625, 630 (Fla. 4th DCA 2021) (citing § 542.335, Fla. Stat. (2014)).

Under Section 542.335 of the Florida Statutes, "enforcement of contracts that restrict or prohibit competition during or after the term of restrictive covenants, so long as such contracts are reasonable in time, area, and line of business, is not prohibited." § 542.335(1), Fla. Stat. (2024). "The person seeking enforcement of a restrictive covenant shall plead and prove the existence of one or more legitimate business interests justifying the restrictive covenant." § 542.335(1)(b). "The term 'legitimate business interest' includes, but is not limited to: . . . [v]aluable confidential business or professional information that otherwise does not qualify as trade secrets [and] [s]ubstantial relationships with specific prospective or existing customers, patients, or clients . . . ." *Id.*

By producing the signed non-compete agreements, Nations has shown that Defendants all signed valid non-compete agreements lasting a reasonable period of one year and that those agreements cover seemingly legitimate business interests. Nations has cultivated a client list and proprietary business information that it has a right to protect from entering into the competitive market. Based on the information provided by Nations at the hearing on the matter, Defendants have used client information and their ability to contact those clients while working for Nations to set up a new, competitive business, ProEar. Therefore, there is a substantial likelihood that Nations will succeed in enforcing

the non-compete agreements. And this is enough to justify a temporary restraining order until Defendants can participate in a full preliminary injunction hearing. *See Proudfoot Consulting Co. v. Gordon*, 576 F.3d 1223, 1231 (11th Cir. 2009) (quoting § 542.335(1)(c), Fla. Stat.) ("Once an employer establishes a *prima facie* case that the contractually specified restraint is 'reasonably necessary to protect the legitimate business interest[s] . . . justifying the restriction,' the burden of proof shifts to the employee to show that 'the contractually specified restraint is overbroad, overlong, or otherwise not reasonably necessary to protect the established legitimate business interest[s].'").

## II.  Irreparable Harm Absent an Injunction

Nations contends that absent an injunction enjoining Defendants from continuing the ProEar business and from further contact with Nations' clients, Nations will suffer actual and imminent irreparable harm "in the form of lost goodwill, further disruptions to its customer relationships, which Nations has spent considerable resources cultivating and maintaining, and further misappropriation of its confidential and proprietary business information." ECF No. 5.

"[T]he very idea of a preliminary injunction is premised on the need for speedy and urgent action to protect a plaintiff's rights before a case can be resolved on its merits." *Wreal, LLC v. Amazon.com, Inc.*, 840 F.3d 1244, 1248 (11th Cir. 2016). Therefore, "[a] showing of irreparable injury is the sine qua non of injunctive relief." *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (citation omitted). "The claimed irreparable injury 'must be neither remote nor speculative, but actual and imminent.'" *Anago Franchising, Inc. v. CHMI, Inc.*, No. 09-60713-CIV-ALTONAGA, 2009 WL 5176548, at *11 (S.D. Fla. Dec. 21, 2009) (quoting *Siegel*, 234 F. 3d at 1176). In addition to economic losses, "the

loss of customers and goodwill is an irreparable injury" in cases where a party provides evidence of specific numbers of customer losses. *Klein v. Oved*, No. 22-80160-CIV-MARRA, 2023 WL 7129942, at *2 (S.D. Fla. June 22, 2023) (citing *BellSouth Telecommunications, Inc. v. MCIMetro Access Transmission Servs., LLC*, 425 F.3d 964, 970 (11th Cir. 2005)) (noting the record evidence in *BellSouth* established specific numbers of customer losses).

In a restrictive covenant case, "a presumption of irreparable harm . . . is the logical consequence of the movant's prima facie showing, including its establishment of the covenant's reasonableness in protecting legitimate business interests at stake." *TransUnion Risk & Alt. Data Sols., Inc. v. MacLachlan*, 625 F. App'x 403, 406 (11th Cir. 2015); *see also Veterinary Orthopedic Implants, Inc. v. Haas*, No. 3:20-cv-868-J-34MCR, 2020 WL 5369087, at *48–49 (M.D. Fla. Sept. 8, 2020) (stating that the purpose of rebuttable presumption is so an employer "does not have to wait until it has been harmed by the loss of a specific customer in order to obtain an injunction"). "A defendant," however, "may defeat the presumption by evidence establishing the absence of injury." *Blue-Grace Logistics LLC v. Fahey*, 340 F.R.D. 460, 467 (M.D. Fla. 2022).

Although Nations did not provide specific numbers for losses at the hearing, Nations did establish that a handful of customers have terminated their contracts with Nations in favor of working with Defendants' new company instead. Nations also produced an email chain with a client dissatisfied with the interruption of the servicing of her account following Jackson and Brady's resignation from Nations. While that interruption cannot be wholly blamed on Defendants, Nations has attempted to maintain

9

relationships with its clients, and client termination of contracts represents an injury to Nations business that justifies the entry of a temporary restraining order.

### III. Balance of Harms

It is Nations' obligation to "prove that the threatened injury outweighs the harm the preliminary injunction would cause the other litigant." *All Star Recruiting Locums, LLC v. Ivy Staffing Sols., LLC*, No. 21-62221-CIV-MORENO/STRAUSS, 2022 WL 2340997, at *13 (S.D. Fla. Apr. 8, 2022). Nations argues that while it continues to suffer injury from lost clients and loss of highly confidential information, the only loss Defendants will suffer is business obtained as a result of their use of information and contacts they had no right to use. Nations also points out that the non-compete agreement only prevents Defendants from beginning or owning their own competitive business in the industry but does not prevent Defendants from working for already established competitors. Allowing a temporary restraining order would maintain the status quo until a more permanent resolution can be determined.

### IV. Service to the Public Interest

"[T]he Florida Legislature has determined that injunctions to protect trade secrets and restrictive covenants serve the public interest." *AutoNation, Inc. v. Mulleavey*, No. 19-60833-CIV-COHN/SELTZER, 2019 WL 4693575, at *5 (S.D. Fla. Aug. 22, 2019). In addition, it is in the public's interest to ensure that parties who enter into contractual agreements, including non-compete agreements, can have those agreements enforced in Florida courts, because the public has an "interest in upholding and protecting freedom to contract and to enforce contractual rights and obligations." *Mohr v. Bank of N.Y. Mellon Corp.*, 393 F. App'x 639, 646 (11th Cir. 2010). *See also Autonation, Inc. v. O'Brien*, 347

F. Supp. 2d 1299, 1308 (S.D. Fla. 2004) ("Public policy in Florida favors enforcement of reasonable covenants not to compete.").

At least at this stage, Nations has made credible allegations that Defendants have possession of Nations' confidential business information and have already used that information to form a competitive business in violation of valid non-compete agreements.

## **RECOMMENDATION**

Although Nations' motion requests a preliminary injunction, because the motion was made and heard ex parte, a temporary restraining order is more appropriate. For the foregoing reasons, it is hereby RECOMMENDED that Plaintiff's Motion be GRANTED. Defendants should be temporarily restrained from pursuing business as ProEar and from contacting clients associated with Nations.

This Temporary Restraining Order should remain in effect until the date of the hearing on Plaintiff's request for a preliminary injunction, or until such further dates as set by the Court or stipulated to by the parties. A hearing is hereby set for **August 21, at 10 a.m.,** in Courtroom 310B of the U.S. Federal Building and Courthouse, 299 East Broward Blvd, Fort Lauderdale, Florida. At the hearing, the Court will hear argument with Defendants' participation on Nations' request for preliminary injunction.

Plaintiff shall serve its Motion and this Report and Recommendation on Defendant immediately. Within three (3) days after being served with a copy of this Report and Recommendation, any party may serve and file written objections to any of the above findings and recommendations as provided by the Local Rules for this district. 28 U.S.C. § 636(b)(1); S.D. Fla. Mag. R. 4(b). Any response shall be filed within three (3) days of the objections. The parties are hereby notified that a failure to timely object waives the

11

right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions contained in this Report and Recommendation. 11th Cir. R. 3-1 (2016); see Thomas v. Arn, 474 U.S. 140 (1985).

DONE and SUBMITTED at Fort Lauderdale, Florida this 8th day of August 2025.

_____
PATRICK M. HUNT
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
The Honorable William P. Dimitrouleas
All Counsel of Record